UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DARRYL COLLINS,

        Plaintiff,

vs.                                                                     Case No.  3:09-cv-249-J-MCR

MICHAEL ASTRUE, Commissioner of the
Social Security Administration,

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

## I.   PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") on November 18, 2005, alleging an inability to work since November 4, 2005.  (Tr. 66-68).  Plaintiff filed an amended application on January 17, 2007, alleging an inability to work since December 1, 2005. (Tr. 494, 502). The Social Security Administration ("SSA") denied Plaintiff's claim initially and on reconsideration.  (Tr. 35-37, 39-40).  Plaintiff requested and received a hearing before an Administrative Law

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 8).

Judge ("ALJ") on August 3, 2006.  (Tr. 41, 676).  On December 5, 2006, the ALJ issued

a decision finding Plaintiff was not disabled.  (Tr. 420-26).  The Appeals Council ("AC")

granted Plaintiff's request for review.  (Tr. 427-28).   By a decision dated October 16,

2007, the AC vacated and remanded the ALJ's decision.  (Tr. 427-28).  Plaintiff's

November 18, 2005 and January 17, 2007 DIB claims were consolidated for hearing.

(Tr. 465-68, 707).  After a second hearing on July 22, 2008, the ALJ issued a decision

dated October 31, 2008, finding Plaintiff was not disabled.  (Tr. 705, 15-27).  On

January 21, 2009, the AC denied Plaintiff's request for review.  (Tr. 8-10).  Having

exhausted all administrative remedies, Plaintiff filed his timely Complaint on September

1, 2009 (Doc. 1), seeking judicial review of the ALJ's final decision under 42 U.S.C. §

405(g).  Accordingly, the matter is now ripe for judicial review.

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Initially, Plaintiff claimed to be disabled since November 4, 2005 due to low back

pain.  (Tr. 66, 92).  After filing an amended application, Plaintiff now claims disability

since December 1, 2005 as a result of his degenerative disc disease and depression.

(Tr. 494).

### B.    Summary of Applicable Evidence Before the ALJ

Plaintiff was 50 years of age at the time the ALJ conducted the July 22, 2008

administrative hearing.  (Tr. 709).  Plaintiff has a GED and past work experience as an

aircraft mechanic, corrections officer, loader/unloader, and chemical operator.  (Tr. 709,

724-25).  Plaintiff asserts he became disabled on November 4, 2005 due to low back

pain.  (Tr. 66, 92).  After amending his disability application, Plaintiff asserts disability since December 1, 2005 because of degenerative disc disease and depression.  (Tr. 494).

As this appeal deals only with Plaintiff's mental impairments, the Court will limit its discussion to the medical evidence regarding Plaintiff's mental impairments.  In sum, Plaintiff alleges depression since December 1, 2005.  (Tr. 494).  On February 7, 2006, Plaintiff indicated to the state agency that he had no history of hospitalization for any mental disorder.  (Tr. 150).  Despite taking pain medication, Plaintiff acknowledged his functional capabilities, which included cleaning, doing laundry, going to the store, driving, socializing with friends and family, and watching television or reading during the day.  (Tr. 150).

On March 31, 2006, Plaintiff reiterated to the state agency that he had no history of treatment for any mental disorder.  (Tr. 153).  With no allegations of depression or mental dysfunction, the state agency found Plaintiff's daily activities did not reveal any limitations in mental functioning.  (Tr. 153).

On April 12, 2006, Plaintiff met with his primary care provider, Hinson Stephens, M.D.  (Tr. 595).  Plaintiff stated he was depressed and anxious and requested a psychiatric referral.  (Tr. 591, 595).  On April 26, 2006, Dr. Stephens conducted a two-week depression checkup on Plaintiff, finding Plaintiff remained depressed and was having an increase in family problems.  (Tr. 592).  Dr. Stephens diagnosed Plaintiff with depression.  (Tr. 592).

On April 17, 2007, Plaintiff underwent a consultative psychological evaluation with Peter Knox, M.Ed., Psy.D.  (Tr. 625-31).  Dr. Knox diagnosed Plaintiff with pain

disorder, major depression, and mild panic attacks based on Plaintiff's complaints of

anxiety and withdrawal.  (Tr. 627, 629).  Plaintiff reported he had no interests and did

little besides sit at home and remain alone.  (Tr. 627).  Additionally, Plaintiff explained

he "[did not] get out much," had "cut off all of [his] associates," and "[felt] better

isolated."  Id.  Dr. Knox noted Plaintiff's euthymic mood and pleasant affect, and

assigned Plaintiff a GAF score of 50.[2]  (Tr. 627, 629).

On April 30, 2007, Val Bee, Psy.D., a state agency psychological consultant,

completed a Psychiatric Review Technique form ("PRTF") for Plaintiff.  (Tr. 632).

Plaintiff's PRTF form revealed affective disorders, anxiety related disorders, and

somatoform disorders, which are consistent with major depression, mild panic attacks,

and pain disorder.  (Tr. 635-38).  During the review, Dr. Bee noted Plaintiff had a

euthymic mood and Plaintiff's interaction style was pleasant and cooperative.  (Tr. 644).

She discovered Plaintiff retained the ability to drive, travel independently, shop, and

handle finances.  (Tr. 644).  Thus, Dr. Bee determined that although Plaintiff's social

involvement was limited, he retained the capacity for superficially appropriate interaction

and a severe mental impairment or limitation was not evident.  (Tr. 644).

On November 16, 2007, Plaintiff received a Pension and Compensation Exam,

performed by Roger Davis, a clinical psychologist at the VAMC.  (Tr. 551-59).  Plaintiff

---

[2] The Global Assessment of Functioning ("GAF") Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 32 (4th ed. 1994).  A GAF score of 41-50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting), or serious impairment in social or occupational functioning (e.g. no friends, unable to keep a job). Id.  A GAF score of 51-60 indicates moderate symptoms, or moderate difficulty in social or occupational functioning (e. g. few friends, conflicts with peers or co-workers). Id.

reported depression due to his back condition as well as panic attacks, whereby he felt "panicky" in some social situations.  (Tr. 554-55).  Dr. Davis noted Plaintiff was taking an antidepressant, Effexor, and that therapy had improved Plaintiff's motivation and mood. (Tr. 553-54).  Dr. Davis opined Plaintiff met the criteria for depressive disorder, which was likely caused by or a result of the degenerative disc disease.  (Tr. 558).  Dr. Davis found no occupational or social impairment due to the mental disorder, and assigned Plaintiff a GAF score of 60.  (Tr. 557).  On November 18, 2007, Dr. Davis changed Plaintiff's diagnosis to chronic adjustment disorder.  (Tr. 584).

On January 2, 2008, Alejandro Vergara, M.D., a second state agency psychological consultant, issued a report based upon his review of the record.  (Tr. 654-666).  Dr. Vergara concluded there was insufficient evidence to determine whether Plaintiff had a mental impairment.  (Tr. 654).

In March 2008, Plaintiff was evaluated by Mohammad Ayubi, M.D., who deemed Plaintiff's mood depressed/dysthymic, yet found Plaintiff had been coping better as a result of a more clear understanding and a consistent medication regiment.  (Tr. 572).

Lastly, the medical records indicate Plaintiff was given a 40% service connected VA disability rating, with 30% apportioned to his affective disorder.  (Tr. 536).

### C.   Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20

C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In this case, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits through March 31, 2011.  (Tr. 15).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 1, 2005.  (Tr. 17).  At step two, the ALJ found Plaintiff had the following severe impairments: disorders of the spine and affective disorder.  (Tr. 17, 19).  At step three, the ALJ determined Plaintiff did not have an impairment, which met or equaled any of the impairments listed in Appendix 1, Subpart P of Regulation No. 4.  (Tr. 19).

The ALJ further determined Plaintiff retained the residual functional capacity ("RFC") to perform low stress light work.  (Tr. 20).  Specifically, the ALJ found Plaintiff

was able to:

> Lift and/or carry no more than 20 pounds at a time with
> frequent lifting or carrying of objects weighing up to 10
> pounds along with a good deal of walking or standing, and
> use of some pushing and pulling of arm or leg controls when
> sitting.  He requires a sit-stand option, occasionally needs to
> use a monocane, can do no more than occasional bending,
> crouching, kneeling, stooping, squatting or crawling, and
> needs to avoid ladders, unprotected heights, and operation
> of heavy moving machinery.

(Tr. 20).  In making this determination, the ALJ found Plaintiff's impairments could

reasonably be expected to produce the alleged symptoms.  (Tr. 21).  However,

Plaintiff's assertions concerning the intensity, persistence, and limiting effects of the

alleged symptoms were not entirely credible to the extent they were inconsistent with

the RFC assessment.  Id.

At step four, the ALJ utilized the testimony of a vocational expert ("VE") during

the hearing to determine if Plaintiff could perform any of his past relevant work.  (Tr. 25).

The VE explained Plaintiff could not perform any of his past work.  Id.  Accordingly, the

ALJ proceeded to step five and asked the VE whether Plaintiff could perform other work

existing in the national economy.  Id.  The VE testified Plaintiff could perform

occupations such as a ticket seller and assembler.  (Tr. 726-27, 729). Therefore, the

ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.

(Tr. 26).

## III.    ANALYSIS

### A.    The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ

applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir.

1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (explaining how the court must scrutinize the entire record to determine reasonableness of factual findings).

The district court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine the Commissioner properly applied the law.  Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994).

B.     **Issues on Appeal**

Plaintiff argues the ALJ erred by failing to incorporate into his RFC finding, the limitations resulting from Plaintiff's mild to moderate impairments in social functioning and by concluding that an RFC of "low stress" work was sufficient to account for such limitations.  (Doc. 12, p. 1, 13).

In response, the Commissioner contends the ALJ was not required to incorporate his rating of impairment severity into Plaintiff's RFC since the rating and RFC required two separate analyses.  (Doc. 13, 5).  The Commissioner also states the ALJ properly evaluated the limiting effects of Plaintiff's mental condition, with substantial evidence supporting the ALJ's RFC finding.  (Doc. 13, 5).

In considering an individual with a mental impairment, the ALJ is required to use the "'special technique' dictated by the [Psychiatric Review Technique Form] for evaluating mental impairments." Moore v. Barnhart, 405 F.3d 1208, 1213 (11th Cir. 2005) (citing 20 C.F.R. § 404.1520a-(a)).  This technique requires separate evaluations on a five-point scale of how the individual's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." Id. (quoting 20 C.F.R. § 404.1520a-(c)(3-4)).  The ALJ is required to complete a PRTF and append it to the decision or incorporate the results of this technique into the findings and conclusions of his decision.  Id. at 1214.  Failure to do so requires remand.  Id.

In this case, the ALJ incorporated into his analysis the results of a PRTF completed by Dr. Bee as well as evaluations by Drs. Knox and Davis.  Specifically, the ALJ found Plaintiff's mental impairment would result in mild restrictions in activities of

daily living; mild to moderate difficulties in social functioning; mild difficulties with regard to concentration, persistence, or pace; and no episodes of decompensation.  (Tr. 19-20). Regarding the area of social functioning, the ALJ found:

> [T]he claimant has no more than mild to moderate difficulties . . .  Although the claimant presented to Dr. Knox as socially isolated, the state agency psychological consultant noted that there is nothing in the record to suggest that he is incapable of superficial social interactions . . . . At the claimant's VAMC Pension and Compensation Examination, [Dr.] Davis noted that the claimant presented as friendly . . . . The claimant reported to the [SSA] that he spends time talking with others on a daily basis . . . . During the hearing, the claimant demonstrated that he was able to interact appropriately and effectively with both his attorney and the [ALJ].

(Tr. 19-20).

Plaintiff acknowledges that findings on a PRTF are not an assessment of his RFC, but he argues these findings are limitations the ALJ must consider when making a final RFC determination.  (Doc. 12, p. 13).  The Commissioner contends that while the ALJ must document application of the special technique in his written decision, the ALJ is not required to incorporate the actual rating or conclusions of the technique into Plaintiff's RFC.  (Doc. 13, 9).  The applicable regulation, SSR 96-8p, provides:

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions

> contained in the broad categories found in paragraphs B and
> C of the adult mental disorders listings in 12.00 of the Listing
> of Impairments, and summarized on the PRTF.

SSR 96-8p.  The more detailed assessment referenced above includes consideration of

the ability to understand; to carry out and remember instructions; and to respond

appropriately to supervision, coworkers, and customary work pressures in a work setting.

20 C.F.R. § 404.1545(c); SSR 85–16.  The ALJ should use evidence from medical

sources, statements by the plaintiff, and reports by third parties to draw inferences about

the plaintiff's strengths and weaknesses as they relate to: the quality of daily activities; the

plaintiff's actions with respect to medical examinations; the ability to sustain activities,

interests, and relations with others over a period of time; the level of intellectual

functioning; and the ability to function in a work-like situation.  SSR 85-16.

While the Court agrees with the Commissioner that the ALJ is not required to use

the exact language of the PRTF at steps four and five, the ALJ must consider all of

Plaintiff's limitations, including those found in the special technique.  Moore, 405 F.3d at

1214.  In this case, the ALJ assigned Plaintiff an RFC of "low stress" work as a result of

the limitations of Plaintiff's affective disorder.  Yet, the ALJ made no further assessment

of his special technique finding that Plaintiff had mild to moderate limitations in social

functioning.  The Court would expect some sort of limitation arising from mild to moderate

difficulties in social functioning.  Trebilcock v. Barnhart, No. 04-18-P-S, 2004 WL

2378856, *4, n.4 (D. Me. Oct. 25, 2004) ("[o]ne would expect a finding of mild to moderate

difficulty in social functioning at the PRTF stage to manifest itself in parallel findings at the

[RFC] assessment stage").  Since it is not clear how a "low stress" working environment

would assist with Plaintiff's difficulties in social functioning, the RFC does not accurately

account for all limitations arising from Plaintiff's mental impairment.

However, this Court previously concluded that when the ALJ relies on the testimony of a VE, the inquiry shifts from the adequacy of the RFC description in the ALJ's decision to that contained in the hypothetical posed to the VE. Davis v. Astrue, No. 3:07-cv-705-J-MCR, 2008 WL 3200278, at *6 (M.D. Fla. 2008) (citing Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. 2008)).  Notwithstanding this fact, the hypothetical question posed to the VE must still provide a comprehensive description of plaintiff's limitations so as to prove the existence of alternative work. Welch v. Brown, 854 F.2d 436, 440 (11th Cir. 1988); McSwain v. Bowen, 814 F.2d 617, 619-620 (11th Cir. 1987).  In this proceeding, the ALJ presented the following hypothetical to the VE:

> Assume I find that the Claimant is 50 years old, has a GED. Assume further I find that he can only perform light work and is further limited by the following exertional and nonexertional impairments: He needs a sit stand option.  He needs to avoid ladders or unprotected heights.  He needs to avoid the operation of heavy moving machinery.  He needs to avoid unusual stress.  He can occasionally bend, crouch, kneel, stoop, squat, or crawl.  And . . . [h]e has the occasional use of a . . . [c]ane . . . . [G]o down to the entry-level and assume that the Claimant has no skills or semiskills at all . . . [h]e is the age I previously described; [and] has the work experience and education previously stated.  Assume further that he could perform light work and has the exertional and nonexertional limitations I originally describe[d] . . . .  Now if I added to my hypothetical that it needed to be low stress instead of just avoid unusual stress . . . .

(Tr. 726-27).  Clearly, the ALJ did not provide any additional information outside of that stated in the RFC.  As such, the hypothetical question was not a comprehensive description of Plaintiff's limitations or restrictions, resulting in the ALJ's decision being

unsupported by substantial evidence.  Pendley v. Heckler, 767 F.2d 1561 (11th Cir. 1985)

(holding that the ALJ's decision is not supported by substantial evidence when

hypothetical used by VE does not include fully all of claimant's limitations).  See also

McHugh v. Astrue, No. 09-104-BW, 2009 WL 5218059, *4 (D. Me. Dec. 30, 2009) (court

found error where ALJ's PRTF which included moderate limitation in concentration,

persistence, or pace was not reflected in RFC.  The RFC simply limited plaintiff to

unskilled, low stress work, which required "only occasional judgment, decision-making,

changes in the work setting, supervision, and interaction with co-workers, and no more

than occasional, incidental contact with the public."); Wiederholt v. Barnhart, 121 F. App'x

833, 839 (10th Cir. 2005) (limitation in hypothetical to simple, unskilled tasks not sufficient

to incorporate mental impairments which ALJ found caused moderate difficulties with

maintaining concentration, persistence, or pace); Ramirez v. Barnhart, 372 F.3d 546, 554-

555 (3rd Cir. 2004) (court found hypothetical posed to VE did not "adequately capture and

recite all of [the plaintiff's] mental impairments and the limitations caused by those

impairments" where ALJ's PRTF included limitation that plaintiff often suffered from

deficiencies in concentration, persistence, or pace but the hypothetical employed with the

VE only limited the plaintiff to simple one or two-step tasks); Whack v. Astrue, No. 06-

4917, 2008 WL 509210, *9 (E.D. Pa. Feb. 26, 2008) (court reversed and remanded

where the ALJ determined plaintiff had moderate limitations in concentration, persistence,

and pace but in the RFC and hypothetical for VE, the ALJ only limited plaintiff to work

requiring no more than occasional contact with co-workers and/or the public and involving

only simple, routine, one-to two-step tasks.  Court noted ALJ may have had a valid

explanation for this omission from the hypothetical but as the ALJ provided no such

explanation for his omission, the court held "[a]bsent further vocational expert testimony tailored to Plaintiff's precise residual functional capacity, the Court cannot speculate as to the outcome.").  Likewise, in the instant case, there may be a reason the ALJ simply limited Plaintiff to low stress positions, but this Court has no way of knowing the reason. Instead, it appears the ALJ simply chose to disregard the limitation regarding Plaintiff's social functioning.

Since the RFC and the hypothetical posed to the VE do not account for all of Plaintiff's limitations or restrictions arising from Plaintiff's affective disorder and moderate limitations in social functioning, the Court finds that the ALJ erred in determining Plaintiff's RFC.  Furthermore, the ALJ's decision was not supported by substantial evidence given the inadequacy of the hypothetical presented to the VE.  Thus, the case shall be remanded to the ALJ with instructions to reassess Plaintiff's mental RFC in light of the PRTF and record medical evidence and to propound a proper hypothetical that incorporates all limitations resulting from Plaintiff's mental impairment.  If the ALJ chooses to reject any of the evidence regarding Plaintiff's mental RFC, he is to state specific grounds for doing so.

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. § 405(g).  On remand, the ALJ shall (1) reassess Plaintiff's mental RFC according to SSR 96-8p, which requires the ALJ to consider the limitations summarized on the PRTF, (2) proffer a hypothetical to a VE that clearly sets forth all of Plaintiff's limitations, and (3) conduct any other proceedings

deemed appropriate.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the date of the notice of award of benefits from the Social Security Administration.  **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**DONE AND ORDERED** at Jacksonville, Florida, this  17th  day of August, 2010.


*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record